**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

TABATHA WHITE,           )
                                )
        Petitioner,          )       NO. 3:06-0428
                                )       JUDGE HAYNES
v.                              )
                                )
JEWEL STEELE, Warden,      )
                                )
        Respondent.       )

### MEMORANDUM

Petitioner, Tabatha White, filed this <u>pro se</u> action under 28 U.S.C. § 2254, seeking the writ

of habeas corpus to set aside her first degree murder conviction for which she received a life

sentence. After appointment of counsel, Petitioner filed an amended petition with the following

claims: (1) that the State's proof was insufficient for her conviction in violation of the Fourteenth

Amendment; (2) that the state trial court's failure to give a circumstantial evidence instruction denied

Petitioner's right to a fair trial in violation of the Fourteenth Amendment; (3) that her trial counsel's

failure to request a jury instruction on circumstantial evidence was deficient and prejudicial in

violation of her Sixth Amendment right to effective assistance of counsel; (4) the state trial court's

failure and her counsel's failure to advise her of her right to testify; and (5) that her appellate

counsel's failure to present the lack of a jury instruction on Petitioner's direct appeal violated

Petitioner's Sixth Amendment right to effective assistance of counsel.

In earlier proceedings, Petitioner moved for summary judgment only on her claim that the

State's proof is constitutionally insufficient to sustain her conviction under <u>Jackson v. Virginia</u>, 443

U.S. 307 (1979). Petitioner contended that at her trial, the State's proof lacked any evidence that she

solicited, encouraged or acted in a common design with her co-defendant who actually shot and

killed the victim. According to Petitioner, the State's proof established only her insistence on repayment of a drug debt from the victim and her presence at the murder scene. Petitioner argued that these facts alone or in combination, are constitutionally insufficient to convict her of first degree murder. In opposition, the Respondent contended that the state courts' decisions on Petitioner's guilt are reasonable applications of federal law. This Court granted Petitioner's motion for summary judgment, concluding that the State's proof failed to establish the Petitioner's intent to commit first degree murder. (Docket Entry No. 33). On appeal, in a divided opinion, a majority of the Sixth Circuit reversed, holding that the State's appellate court reasonably applied state and federal law to conclude that the State's proof was sufficient to sustain Petitioner's conviction of first degree murder. White v. Steele, 602 F.3d 707 (6th Cir. 2009).

After remand, Petitioner moved for summary judgment on one of her claims, but in light of Trevino v. Thaler, 449 F. App'x 415 (5th Cir. 2011) cert. granted 568 U. S. __ (Oct. 29, 2012), the Court administratively closed this action. (Docket Entry No. 59). After the Supreme Court's decision in Trevino, this Court reopened this action. (Docket Entry No. 61).

Before the Court are the parties' renewed motions for summary judgment (Docket Entry Nos. 62 and 63). In sum, Petitioner's motion seeks relief on her claim that her trial counsel failed to request a jury instruction on circumstantial evidence that constituted deficient and prejudicial omissions in violation of petitioner's Sixth Amendment right to effective assistance of counsel. Petitioner also asserts that appellate counsel failed to raise this issue on appeal. Petitioner contends that the facts in the state record and applicable law establish that these omissions were deficient and prejudicial. Petitioner also seeks relief on her claim that she was denied the right to testify.

In her motion, the Respondent seeks summary judgment on all of Petitioner's claims and

contends that the state courts reasonably determined under federal law that Petitioner's claims about her counsel's failures to request a jury instruction on circumstantial evidence and to advise her of her right to testify were without merit and/or harmless error. Respondent also argues that Petitioner's claims: (1) that the trial court failed to give a jury instruction on circumstantial evidence; (2) that the state trial court failed to advise her of her right to testify; and (3) that her appellate counsel failed to present the absence of a jury instruction on circumstantial evidence on direct appeal, are procedurally defaulted without any showing of cause or prejudice.[1,2]

## A. Findings of Fact[3]

In <u>State v. Robins</u>, No. M2001-01862-CCA-R3-CD, 2003 WL 1386835 (Tenn. Crim. App. March 20, 2003),[4] the Tennessee Court of Criminal Appeals found the underlying facts on

---

[1] Petitioner did not file a response to Respondent's motion for summary judgment. Claims that are not briefed are deemed waived. <u>United States v. Sandridge</u>, 385 F.3d 1032, 1035 (6th Cir.2004) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Moreover, if a claim were not fairly presented to the the state courts that lacked the opportunity to consider the claim, then that claim is procedurally defaulted and subject to dismissal. <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995); <u>Coleman v. Thompson</u>, 501 U.S. 722, 752-54 (1989). To be fairly presented, each claim must be presented under the same legal and factual theory to both courts. <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982). Thus, the Court will not consider Petitioner's claims that are not briefed. Thus, Petitioner's sole remaining claim is for her trial counsel's failure to request a jury instruction on circumstantial evidence

[2] The Court considers Petitioner's claims in her motion for summary judgment under <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012) and <u>Trevino v. Thaler</u>, 133 S. Ct. 1911 (2013). <u>Sutton v. Carpenter</u>, No. 12–6310,2014 WL 1041695, at *7 (6th Cir. March 19, 2014) ("ineffective assistance of post-conviction counsel can establish cause to excuse a Tennessee defendant's procedural default of a substantial claim of ineffective assistance at trial.").

[3] State appellate court opinion findings can constitute factual findings under 28 U.S.C. § 2254(e)(1). <u>Sumner v. Mata</u>, 449 U.S.539, 546-47 (1981).

[4] Petitioner's direct appeal was consolidated with her co-defendant's appeal.

Petitioner's conviction that:

> Around 10:00 p.m. on February 29, 2000, Lyntasha Simmons was inside her apartment at Nashville's Parkway Terrace Apartments when she heard gunshots outside. She looked out her door and saw a person lying on the ground. She had just telephoned the police when an onlooker informed her that it was her brother, Eugene Simmons, also known as Michael Roach, who had been shot. Simmons dropped the phone, ran to her brother's side, and waited for the police to arrive. The victim was transported by ambulance to Vanderbilt Hospital where he died the next day. Metro Nashville Police Officer Terrence Graves testified that, at 10:08 p.m., he received a dispatch regarding a shooting at that location. He arrived within a minute, saw that the victim had suffered gunshot wounds, and secured the scene.

> Amelia Patterson testified that she, along with Pamela Johnson, Tara Johnson, and their cousin, Gerald Johnson, was standing on the porch outside of Pamela's apartment on the night of the shooting. Pamela was on her cell phone talking to a person she referred to as "Tab" when she, referring to the victim, said, "[H]ere he go right here." Pamela told Gerald to bring the victim to her porch. Gerald approached the victim, who was walking just a few feet away, and "kind of like shook him up and brought him over to the porch." **The victim "was refusing, but he finally came over there," and Pamela put him on the phone to speak with Tab, who wanted to "talk to him about her money." Patterson testified, "All I heard him say was that he was going to give her her money at 11:30." Patterson said the conversation ended, and "I guess they had told her that they was on their way. They was on the Interstate and she had hung up." Pamela informed her that their discussion concerned "ten-dollars ($10.00) worth of white," meaning cocaine.**

> \* \* \*

> The victim proceeded to walk away when Pamela again instructed Gerald to bring him back to the porch. The victim protested, explaining that he had to go heat up the bag of food that he was carrying. Pamela responded that he could heat it up at her house and, apparently accepting this offer, he began walking toward her porch. **Patterson testified that the victim "didn't make it on the porch," however. At this moment, Tab, accompanied by a man, emerged from the parking area and asked, "where her mother-fucking money was." The victim was never given the opportunity to respond to Tab's demand as the man, who was approximately five or six feet away from the victim, pulled a gun from his pocket and shot him. From the witness stand, Patterson identified Tab as the defendant Tabatha White and the gunman as the defendant Leon Robins. Patterson testified that the police attempted to question Pamela Johnson the night of the shooting, but she "wasn't really cooperating" and was "acting like she was hallucinating."**

4

**Tara Johnson testified that, in the days preceding the murder, Tabatha White asked her to keep on the lookout for the victim because she had given him "ten-dollars ($10.00) to do something for her." She remembered Pamela Johnson talking to White** on her cell phone on the night of the shooting and informing her that the victim was present. She testified that Pamela told Gerald Johnson to bring the victim to her, which he did. The victim spoke with White on the telephone and told her that he would pay her at 11:30. As the victim attempted to leave, Gerald forced him to stay, and Pamela told him to heat his food at her house. **Before the victim could enter the house, Tabatha White and a man approached. White said "she wanted her mother-fucking money," and the "dude" shot the victim. Tara heard three gunshots fired and ran into the house. She testified that she did not see either person's face, but recognized the voice as that of Tabatha White, even though she "didn't really know [her] that much."**

**Pamela Johnson testified that the defendants were at her house "[e]ither one or two days before" the shooting, and Tabatha White gave the victim ten dollars to procure drugs.** Although she had known White "[f]or about two or three years," it was her first encounter with Leon Robins. **When the victim failed to return with either the drugs or the money, White was "mad" and instructed Johnson to be on the lookout for him.** On the night of February 29, Johnson, standing in her doorway, spotted the victim and called White on a cell phone. Johnson then called the victim over and put him on the phone with White. The phone cut off and the victim proceeded to leave. She called White back and had her cousin, Gerald Johnson, bring the victim back to the front of her house. Moments later, **Robins shot the victim and White said "something to him about her money." Johnson testified that she thought the defendants were "just going to beat him up or something."**

Detective Danny Satterfield of the Metro Police Department testified that, before trial, Pamela Johnson had told him that she was inside her house when the shooting occurred and could not identify the shooter. At Tabatha White's bond hearing, Johnson again stated that she did not witness the shooting and denied making phone calls to White prior to the shooting.

Saying that she had been scared, **Pamela Johnson admitted to lying to the police on the night of the shooting by telling them both that she did not know who shot the victim and that Tabatha White had not been there, as well as lying at White's bond hearing. According to Johnson, White had called her and said "just keep the cool and ... everything will be all right."** At some point, however, Johnson changed her story and identified both defendants from photographic lineups, explaining that she "just had to tell the truth" and her "kids don't need to be having a momma that is getting in trouble for something she didn't do." On

5

cross-examination, it was elicited from Johnson that the police "coerced" her regarding her testimony. However, neither the details of the alleged coercion, nor its alleged effect, was revealed.

Detective Satterfield testified that, during his investigation, he spoke with Amelia Patterson who told him that "she was there and witnessed the shooting incident." On March 9, 2000, he showed her a photographic lineup of suspects from which she identified Robins without any uncertainty as the man who shot the victim. From another photographic lineup, [Patterson] identified Tabatha White as the woman who was with Robins. That same day, Detective Satterfield spoke with Tara Johnson, who also witnessed the shooting, and showed her identical photographic lineups.

Because of the extensive questioning of Tara Johnson's selections from the male and female photographic lineups, we will set out the details of this matter. The record on appeal includes a copy of each, that of the females depicting Tabatha White as photograph number 4 and that of the males depicting Leon Robins as photograph number 6. On the form that corresponds to the male lineup, she identified "Picture No. 4, White, Tabatha" as "somebody she knew," explaining, "This is Tab. Don't know if Tab was there." However, she made no marks on the form corresponding to the female lineup. Thus, the form that was filled out for the male lineup actually refers to the female lineup, and no form was filled out by the witness corresponding to the male lineup.

Victoria Shelton, who lived in the apartment complex where the shooting occurred, testified that, on that night, she was inside her house and overheard Gerald Johnson tell the victim "that he was going to give him something." When the victim explained that he would pay him later that night, Gerald Johnson "kept saying no." "A few seconds, a couple of minutes" later, she heard four gunshots, went outside, and saw the victim on the ground. She saw a white Chevrolet Cavalier leave the parking lot, and she said that a "light-skinned male black" usually drove that particular car.

Harold Overton testified that he lived in Apartment U-166 at the Knollcrest Apartments. On March 3, 2000, Detective Clifford Mann, responding to an anonymous Crime Stoppers tip, visited Overton to question him about Tabatha White, who lived in nearby apartment U-162. [Overton] told Detective Mann that he was familiar with White and her occasional visitor, Leon Robins, whom he identified from a photographic lineup. A few nights earlier, according to his testimony, he witnessed Robins engaging in the following conversation:

There was [sic] about three or four guys that were talking, and then one guy walked up and he said Leon, man, ... they are looking for you.... And then he said, like, well, I don't give a fuck, you know, there is more than one Leon ... and then he said besides that, they don't know my last name[.]

On cross-examination, Overton testified that he was fifteen to twenty feet away from the conversation and that, although it was dark, the area was well lit by a streetlight.

Dr. Bruce Levy, the Davidson County Medical Examiner, testified that the victim was shot twice. One bullet entered the middle of the forehead and the other entered the back of the left thigh. As to the head wound, Dr. Levy concluded that the barrel of the gun was greater than two feet away when fired. Based on toxicology tests, he testified that the victim was under the influence of cocaine at the time of the incident.

Cody Sims, customer operations manager for Cricket Communications, a cellular telephone company, testified that Pamela Johnson was a customer on February 29, 2000, and that her cell phone number was 615-485-5158. **Laurie Turner, a legal affairs coordinator for Powertel, another cellular telephone company, testified that, according to company records, Tabatha White was a customer on February 29, 2000, and, on that day, three consecutive incoming calls were received on her cell phone from Pamela Johnson's 615-485-5158 phone number. The respective times for those three calls were 9:52, 9:53, and 9:58 p.m.**

**Marion Tucker testified on behalf of Leon Robins that,** on the night of February 29, he, apparently, was a witness to the confrontation with the victim, saying, "I seen this female come up [and] assault [the victim] over ten-dollars ($10.00), and I turned around and ran, and that is all I seen." He stated that **the woman who said "Where my ten dollars at?" was holding a gun.**

Robins' sister, Nicole House, testified that she was with him at their mother's house on the night of the shooting and, when she left "[b]etween 10:15 and 10:30," he was still there. On cross-examination, she testified that, although she had learned at the preliminary hearing the time and date of the murder for which her brother had been charged, she did not inform the police that she had been with him at the time of the killing. Martinique Robins, another sister of the defendant, also testified that, on the night of the murder, he still was at their mother's house when she departed, sometime "close to 10:30." Like her sister, she did not contact the police about her brother's whereabouts on the night and time of the shooting. Robins' mother, JoAnn Hardy, testified that her son was at home when she returned from work shortly after 11:00 p.m. on the night of the shooting.

**Tabatha White's mother, Raven White, testified that her daughter was with her at her house at the time of the shooting. On cross-examination, she admitted that at her daughter's bond hearing, she stated that she went to bed around 9:00 p.m. on the night of the shooting. White's father, James White, testified that he usually goes to bed at "7:30 or 8:00" and that, on the night of the shooting, his daughter "was there when I went to bed. She was there when I got up. Other than that, I can't tell you nothing." But, he testified, if she were to have left**

> **while he was asleep, the dogs would have awakened "everybody just about in the neighborhood."**

Id. at *1-4 (footnotes omitted) (emphasis added).

In earlier proceedings, Petitioner cited the state record reflecting that Amelia Patterson, a prosecution witness, at the direction of the assistant district attorney, viewed a photograph of the scene and identified on the photograph the location of all of the persons at the time of the shooting. The prosecution made the pertinent notations on the photograph. The photograph was admitted into evidence as State's Exhibit 2. (Docket Entry No. 10, Addendum No. 2, Volume 1, at 54-58; Docket Entry No. 10, Addendum No. 2, Volume 3, Exhibits, at 101-02). In that photograph, moving from left to right, Patterson placed the victim (marked with a "V" in a circle) (id., at 55-56), the co-defendant, Leon Robins (marked with an "LR" in a circle) (id. at 56), herself (marked with "AM" in a circle) (id. at 55), the location of Pamela Johnson's apartment (marked "PJ") (id. at 55), and Tabatha White (marked with "TW" in a circle). (Id. at 56). According to Exhibit 2 and Patterson's testimony, at time of the shooting, White was the person most removed from the victim, and Patterson stood between White and Robins. (Docket Entry No. 10-4 at 101).

From the State's proof, prior to the Petitioner's arrival at the murder scene, Petitioner was on her cell telephone talking to a person about the victim and wanted to "talk to the victim about her money." Robins, 2003 WL 1386835, at *1. The testimony of Amelia Patterson, Tara Johnson, and Pamela Johnson establish that the victim had borrowed $10 from Tabatha White to buy cocaine. When the victim did not deliver, White became angry and spoke with the victim on the telephone. The victim promised to pay White by 11:30 p.m. that night. The State's proof on the White-Robins relationship was the testimony of Harold Overton who testified that they had been seen together and

that Robins had been seen "around" White's apartment. (Docket Entry No. 10-2 at 117-18). On cross-examination when asked to explain what he meant by Robins being "around" White's apartment, Overton responded. "No, not in front of her [White's] apartment, no. They were going in front of my window." Id. at 125.

At the murder scene, White approached the victim and demanded her money. According to Patterson, White asked for her money, and Amelia Patterson testified that at the scene, Petitioner asked only for her money and "nothing else." Id. at 79. Then, Robins shot the victim. The Tennessee appellate court did not address a time span for this murder, but its findings of fact reveal that in all likelihood, Petitioner lacked the time to hand a gun to her co-defendant, Leon Robins. As the Tennessee appellate court found:

> Patterson testified that the victim "didn't make it on the porch," however. **At this moment**, Tab[atha] accompanied by a man, emerged from the parking area and asked, "where her mother-fucking money was." **The victim was never given the opportunity to respond to Tab[atha]'s demand as the man, who was approximately five or six feet away from the victim, pulled a gun from his pocket and shot him.**

White v. State, No. M2004-02679, 2005 WL 2662571 at *1 (Tenn. Crim. App. Oct. 19, 2005) (emphasis added).

According to these findings, this shooting occurred very quickly. Little time expired between the time Petitioner and her co-defendant emerged from the parking lot and before the victim was shot. As found by the state court, the victim did not have time to respond to Petitioner's question about her money before Petitioner's co-defendant shot and killed the victim. The Tennessee Court of Criminal Appeals concluded that "[a] jury could reasonably infer from this evidence that she shared the criminal intent to kill the victim." State v. Robins, No. M2001-01862, 2003 WL

1386835, at *6 (Tenn. Crim. App. March 20, 2003). The other pertinent facts are set forth in the context of Petitioner's specific claims.

## B. Conclusions of Law

Petitioner's viable habeas claims, if timely, are governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." In such instances, the Supreme Court held that a federal habeas court may grant a writ. Id. The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States"as referring to "holdings as opposed to dicta" of its decisions "as of the time of the relevant state-court decision." Id. at 412. Moreover, the relevant analysis is "to apply a rule of law that was clearly established at the time [the Petitioner's] state-court conviction became final." Id. at 390; accord, Joshua v. DeWitt, 341 F.3d 430, 436 (6th Cir. 2003). In Bell v. Cone, 535 U.S.

685, 693 (2002), the Court reiterated that the AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, the Supreme Court stated that a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The district court "must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 737-38 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," and a district court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "'state court decision is so clearly incorrect that it would not be debatable among reasonable jurists.'" Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

In reaching this decision, the Supreme Court reiterated that the claims were to be decided on the record before the state court:

> In this and related contexts we have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Yarborough v. Gentry, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)

11

124 S.Ct., at 4 (denying relief where state court's application of federal law was "supported by the record"); Miller-El v. Cockrell, 537 U.S. 322, 348, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Holland v. Jackson, 542 U.S. 649, 652 (2004) (emphasis added). The district court also "must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 737-38 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. Skaggs v. Parker, 235 F.3d 261, 266 (6th Cir. 2001).

### 1. Trial Counsel's Failure to Request A Circumstantial Evidence Instruction

Petitioner's ineffective assistance of counsel claim is that her trial counsel failed to request a jury instruction on circumstantial evidence. The Tennessee Court of Criminal Appeals made the following findings and conclusions of law on this claim for which that court found to fail for lack of prejudice:

> Next, the petitioner claims that she received the ineffective assistance of counsel because her attorney failed to request that the trial court give a jury instruction on circumstantial evidence. She contends that a circumstantial evidence instruction was warranted because "[although] there was direct evidence in the form of testimony that Ms. White was present at the scene of the shooting, and asked the victim prior to his being shot where her 'mother-fucking money' was, this in no way establishes any intent to murder the victim." The State argues that because there was direct evidence of the petitioner's guilt, a circumstantial evidence instruction was not required. We conclude that a circumstantial evidence instruction was not warranted and that, in any event, the petitioner has failed to show that she was prejudiced by the trial court's failure to give the instruction.
>
> **A defendant has a "constitutional right to a correct and complete charge of the law."** State v. Teel, 793 S.W.2d 236, 249 (Tenn.1990). **Accordingly, trial courts "should give a requested instruction if it is supported by the evidence, embodies a party's theory, and is a correct statement of the law."** State v. Phipps, 883 S.W.2d 138, 150 n. 20 (Tenn. Crim. App.1994).

In this case, the jury heard several eyewitnesses testify that they saw the petitioner and Robins arrive together and approach the victim together. They then heard the petitioner ask the victim about her money, saw Robins pull out a gun and shoot the victim, and saw the petitioner and Robins flee the scene together. This was direct evidence of the petitioner's guilt. **Although the trial court did not instruct the jury on circumstantial evidence, the trial court instructed the jury that a "defendant is criminally responsible as a party to an offense if the offense was committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible or by both." We believe this was a correct charge of the law. Moreover, given the evidence against the petitioner, she has failed to show how she was prejudiced by the State's failure to give the instruction. The petitioner is not entitled to relief.**

White, 2005 WL 2662571 at *9 (emphasis added).

To prevail on any claim of ineffective assistance of counsel, Petitioner must demonstrate that under the totality of the circumstances, Petitioner's trial counsel performed deficiently and that counsel's deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). As the Supreme Court explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. As to the duty to investigate:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and **strategic choices after less than**

13

> complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
>
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Id. at 690-91 (emphasis added).

In a word, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Wiggins v. Smith, 539 U.S. 510, 521 (2003). Counsel's failure "'to conduct [] constitutionally adequate pretrial investigation into potential evidence" can "hamper[] [their] ability to make strategic choices.'" Harries v. Bell, 417 F.3d 631, 639 (6th Cir. 2005) (citation omitted). See also Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991) ("[O]ur case law rejects the notion that a 'strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them.").

As to the meaning of "prejudice," the Supreme Court stated that it was "expressly leaving to future cases further elaboration of the significance of that term." United States v. Frady, 456 U.S. 152, 168 (1982) (quoting Wainwright v. Sykes, 433 U.S. 72, 91 (1977)). Prejudice can be demonstrated by a showing of ineffective assistance of counsel. Hill v. Lockart, 474 U.S. 52, 58–59 (1985). In Cullen

14

v. Pinholster, 131 S. Ct. 1388 (2011), the Supreme court reiterated that a strong presumption of adequate assistance exists and any deficiency in counsel's performance must undermine confidence about the conviction.

> In **Strickland**, this Court made clear that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation ... [but] simply to ensure that criminal defendants receive a fair trial." 466 U.S., at 689, 104 S.Ct. 2052. Thus, "**[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.**" Id., at 686, 104 S.Ct. 2052 (emphasis added). The Court acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id., at 689, 104 S.Ct. 2052.
>
> Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," ibid., **the Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,"** id., at 690, 104 S.Ct. 2052. **To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances."** Id., at 688, 104 S.Ct. 2052. **The Court cautioned that "[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges."** Id., at 690, 104 S.Ct. 2052.
>
> The Court also required that defendants prove prejudice. Id., at 691–692, 104 S.Ct. 2052. "**The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.**" Id., **at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome.**" Ibid. That requires a "**substantial,**" not just "**conceivable,**" likelihood of a different result. Richter, 562 U.S., at ——, 131 S.Ct., at 791.

Id. at 1403 (emphasis in original and added).

As to the significance of Petitioner's counsel's omission, the Court deems a brief review of the Tennessee law on circumstantial evidence and jury instructions on such evidence. The Tennessee Supreme Court explained the distinction between "direct" and "circumstantial" evidence, "Direct evidence as follows: has been defined as evidence which, if believed, proves the existence of the fact

15

in issue without inference or presumption, whereas circumstantial evidence, without going directly to prove existence of a fact, gives rise to a logical inference that such fact exists. Direct evidence may consist of testimony of a person who has perceived the existence of a fact, sought to be proved or disproved, by means of his senses." State v. Thompson, 519 S.W.2d 789, 792-793 (Tenn. 1975). "Circumstantial evidence is evidence of collateral facts and circumstances from which the trier-of-fact may infer that the main fact is based on reason and common experience." State v. Phillips, 138 S.W.3d 224, 231 (Tenn. Ct. App. 2003) (citing Bishop v. State, 287 S.W.2d 49, 50 (Tenn. 1956)).

As to jury instructions on consideration of circumstantial evidence, "when the evidence introduced against a defendant is both circumstantial and direct and the defendant requests a charge on the law of circumstantial evidence, **it is reversible error to refuse to give it**."[5] Monts v. State, 379 S.W.2d 34, 41 (Tenn. 1964) (emphasis added).

> When a case is grounded on both circumstantial and direct evidence, it is entirely possible that the jury, in the exercise of its function as the sole judge of the credibility of the evidence, may find that the direct evidence is unworthy of belief. If they should so find, then they would be left with only the circumstantial evidence to guide them in determining whether the defendant is guilty of the offense charged . . . The possibility . . . makes it imperative that the trial judge instruct the jury on the law of circumstantial evidence.

Id. at 41. Later, Tennessee law was extended so that "[i]n criminal cases, there is a positive duty upon a trial judge to give the jury a complete charge on the law applicable to the facts of the case." State v. Phipps, 883 S.W.2d 138, 149 (Tenn. Crim. App. 1994) (citing State v. Harris, 839 S.W.2d 54, 73 (Tenn.1992)). "A defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the trial court." Id. at 149-

---

[5] To be sure, Petitioner's claim that the trial court's failure to give a jury instruction on circumstantial evidence is not considered on its merits, the Court considers Tennessee law on the issue of the significance of trial counsel's omission.

50 (citing Casey v. State, 491 S.W.2d 90, 94 (Tenn. Ct. Crim. App.1972)).

As to the jury's evaluation of circumstantial proof, the Tennessee Court of Criminal Appeals explained:

> The trial court has the duty to charge the jury on the weight and significance of circumstantial evidence when it is the only basis upon which the state's case rests. Like all other fact questions, the determination of whether all reasonable theories or hypotheses are excluded by the evidence is primarily a jury question.
>
> **The jury is governed by four rules when testing the value of circumstantial evidence: (1) the evidence should be acted upon with caution; (2) all of the essential facts must be consistent with the hypothesis of guilt; (3) the facts must exclude every other reasonable theory except that of guilt; and (4) the facts must establish such a certainty of guilt as to convince beyond a reasonable doubt that the defendant is the perpetrator of the crime.**

State v. Jeffries, No. W1998-00002-CCA-R3-CD, 2000 WL 135388 at *4 (Tenn. Crim. App Feb. 2, 2000) (citing Marable v. State, 313 S.W.2d 451, 456 (Tenn. 1958); Bishop, 287 S.W.2d at 52 ; and State v. Tharpe, 726 S.W.2d 896 (Tenn. 1987) (emphasis added)).

Here, given the State's proof, the critical jury issue was Petitioner's intent, as the Tennessee Court of Criminal Appeals stated, a "jury could reasonably infer from this evidence that [Petitioner] shared the criminal intent to kill the victim." Robins, 2003 WL 1386835, at *6. As pertinent here, Tennessee's aiding and abetting statute, Tenn. Code Ann. § 39-11-402(2), provides, in pertinent part, "A person is criminally responsible for an offense committed by the conduct of another, if: . . . (2) **Acting with intent to promote or assist the commission of the offense**, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense."(emphasis added). As the Tennessee Court of Criminal Appeals explained: "Under the theory of criminal responsibility, presence and companionship with the perpetrator of a felony before **and** after the commission of the crime are circumstances from which an individual's

17

participation **may be inferred**.  No particular act need be shown, and the defendant need not have

taken a physical part in the crime." Robins, 2003 WL 1386835, at *6 (emphasis added).

In the earlier appeal, the Sixth Circuit commented on the State's proof in the majority opinion

as follows:

> State v. Ball, 973 S.W.2d 288 (Tenn.Crim.App.1998), does not require a different
> conclusion. Ball explained the circumstances that support attaching criminal
> responsibility:
>
>> Presence and companionship with the perpetrator of a felony before
>> and after the commission of the offense are circumstances from which
>> one's participation in the crime may be inferred. No particular act
>> need be shown. It is not necessary for one to take a physical part in
>> the crime. Mere encouragement of the principal is sufficient.
>
> Id. at 294 (internal citation omitted). The Tennessee Court of Criminal Appeals
> explicitly considered White's case in light of Ball and found the evidence sufficient
> to support the conviction. The fact that the state offered no direct evidence that White
> accompanied the perpetrator after the murder does not mean that the evidence failed
> to meet the requirements of Ball. Ball merely states that prosecutors can use presence
> and companionship to prove liability- Ball does not require presence and
> companionship. **The state court interpreted Tennessee law to hold the facts of
> this case sufficient for a jury to infer White's intent and participation.** Courts
> must draw a difficult line between inference and speculation, and when a state court
> draws a reasonable one, we defer to its judgment.

602 F.3d at 711 (emphasis added). In his dissenting opinion, Judge Martin characterized the State's

proof as follows:

> **the state offered no evidence that White knew Robins was even armed, much less that
> she intended to aid in or benefit from Simmons's murder or even knew that Robins
> intended to kill Simmons. Instead, the state proved nothing more than that White was
> mad at Simmons and arrived at and fled the scene with Robins. Using these facts to
> infer that White knew of and was complicit in Robins's plan to kill Simmons** amounts
> to nothing more than speculation and is thus not constitutionally sufficient evidence to
> support the conviction.

Id. at 712 (emphasis added). In a word, both opinions reflect that the State's proof on Petitioner's

intent was circumstantial evidence.

18

"[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." Patterson v. New York, 432 U.S. 197, 210 (1977). "The judge's instructions to the jury as to the law and how the evidence should be assessed are crucial to a fair trial. They should guide the jury's deliberations and are not mere technicalities in our legal system. Errors in such matters may go to the heart of the question of guilt." Houston v. Dutton, 50 F.3d 381, 385 (6th Cir. 1995).

As to the significance of a defense counsel's failure to request a jury instruction on circumstantial evidence, Tennessee courts have held such an omission to constitute ineffective assistance of counsel and to warrant post conviction relief. Tappan v. State, No. W2008-02063-CCA-R3-PC, 2010 WL 3463310 (Tenn. Crim. App. Sept. 3, 2010).

> Finally, Petitioner argues that counsel was ineffective on appeal because she did not argue that the trial court erred by not giving an instruction regarding circumstantial evidence. A defendant has a "constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn.1990), superceded by statute on other grounds as stated in State v. Reid, 91 S.W.3d 247 (Tenn.2002). Accordingly, trial courts "should give a requested instruction if it is supported by the evidence, embodies a party's theory, and is a correct statement of the law." State v. Phipps, 883 S.W.2d 138, 150 n. 20 (Tenn. Crim .App.1994). Indeed, "there is a positive duty upon a trial judge to give the jury a complete charge on the law applicable to the facts of the case." Id. at 149. While a guilty verdict can be based exclusively upon circumstantial evidence, see State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn.Crim.App.1999), in order to sustain the conviction the facts and circumstances of the offense "must be so strong and cogent as to exclude every other reasonable hypothesis save the [defendant's] guilt," State v. Crawford, 470 S.W.2d 610, 612 (Tenn.1971). When a prosecution rests entirely on circumstantial evidence, the defendant is entitled to an instruction regarding this rule of law. See Tenn. Pattern Instr .-Crim. 42.03, cmt. 1; see also State v. Thompson, 519 S.W.2d 789, 792 (Tenn.1975); Monts v. State, 379 S.W.2d 34, 40 (1964).
>
> Here, although there was direct evidence that Petitioner committed the aggravated burglary of the residence, there was only circumstantial evidence that he stole Ms. Young's car. Counsel testified that she did not request the instruction because she thought it was not necessary. However, based upon the record, we conclude that counsel should have requested the instruction. The only evidence that Petitioner stole

the car was the fact that he and his co-defendant possessed it during a robbery two days later. **The circumstantial evidence instruction would be appropriate in this case, and reasonable counsel would have raised this issue at trial or on appeal. Counsel's failure to do so was thus constitutionally deficient.** See Goad, 938 S.W.2d at 369; Baxter, 523 S.W.2d at 936.

**Counsel's failure was also prejudicial.** See Strickland, 466 U.S. at 694. But because Petitioner has framed this claim as ineffective assistance of appellate-rather than trial-counsel, the prejudice analysis is somewhat more complicated. The issue was not raised in the motion for new trial, as is required by Tennessee Rule of Appellate Procedure 3. Nor does the record indicate that Petitioner objected to the instructions at trial. Thus, the issue would have been waived on direct appeal. See Tenn. R.App. P. 3(e); State v. Haynes, 720 S.W.2d 76, 84-85 (Tenn.Crim.App.1986); see also State v. Corey Finley, No. W2005-02804-CCA-R3-CD, 2007 WL 1651879, at *6 (Tenn.Crim.App. at Jackson, June 7, 2007). Had counsel raised it on appeal, it would have been reviewed for plain error. See Tenn. R.App. P. 36(b). Plain error requires that (1) the record clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn.Crim.App.1994); see also State v. Smith, 24 S.W.3d 274, 283 (Tenn.2000) (adopting the Adkisson test for determining plain error).

Omitting the circumstantial evidence instruction was plain error in this case. The record clearly shows that the evidence upon which the State relied for the theft count was exclusively circumstantial. It also shows that the circumstantial evidence instruction was not given, nor was the jury given any other special instruction to guide its evaluation of the evidence against Petitioner on this count. Our case law has long held that when the incriminating evidence is exclusively circumstantial, "the failure of the judge to instruct the jury the law of circumstantial evidence, whether or not the respondent requests such instructions, is fundamental reversible error." Thompson, 519 S.W.2d at 792 (citing cases) (emphasis added); see also State v. Caldwell, 671 S.W.2d 459, 465-66 (Tenn .1984). Thus, there is a reasonable probability that, but for counsel's unprofessional errors, Petitioner's conviction on Count II would have been reversed on appeal.

**We therefore conclude that Petitioner has demonstrated that he received ineffective assistance of counsel with respect to his conviction** for theft of property valued at $1,000 or more but less than $10,000 in Count II and that he is entitled to a new trial on that count.

Id. at * 7-8 (emphasis in original) (footnote omitted). As noted earlier, under Tennessee law, if the

instruction had been requested and refused by the trial court such refusal would have been "reversible error." Monts, 379 S.W.2d at 41.

Moreover, this Circuit and several other Circuits hold that a defense counsel's failure to request a relevant jury instruction can constitute ineffective assistance of counsel, but requires a showing of actual prejudice. Mackey v. Russell, 148 Fed.Appx. 355, 365-66 (6th Cir. 2005) ("this Circuit [has] previously held that the failure to request a limiting instruction with regard to some important piece of evidence can constitute constitutionally ineffective assistance of counsel if the failure falls outside of an objective standard of professionally reasonable conduct") (citing White v. McAninch, 235 F.3d 988, 998 (6th Cir.2000); see also Steffes v. Pollard, 663 F.3d 276, 281 (7th Cir. 2011) (counsel's failure to request instruction necessary for proper consideration of proof conceded to be deficient, but not prejudicial); United States v. Luck, 611 F.3d 183, 188-90 (4th Cir. 2010) (defense counsel's failur to request an informant instruction was deficient and prejudicial); Williams v. Ozmint, 494 F.3d 478, 484 (4th Cir. 2007) (defense counsel's failure to request plain meaning instruction on life imprisonment was deficient, but not prejudicial); Pirtle v. Morgan, 313 F.3d 1160, 1169-74 (9th Cir. 2002) (counsel's failure to request a diminished capacity instruction in trial for aggravated first degree murder held deficient and prejudicial); Luchenburg v. Smith, 79 F.3d 388, 392-93 (4th Cir. 1996) (counsel's failure to object to instruction and failure to request an instruction on the meaning of a "crime of violence" that was a predicate for Petitioner's conviction was deficient and prejudicial)

As these principles are applied here and as reflected in the decisions of the Tennessee appellate court and the Sixth Circuit, the jury "inferred" the Petitioner's guilt. As stated in the dissenting opinion of the Sixth Circuit " **the state offered no evidence that White knew Robins**

21

**was even armed, much less that she intended to aid in or benefit from Simmons's murder or even knew that Robins intended to kill Simmons. Instead, the state proved nothing more than that White was mad at Simmons and arrived at and fled the scene with Robins. Using these facts to infer that White knew of and was complicit in Robins's plan to kill Simmons** amounts to nothing more than speculation and is thus not constitutionally sufficient evidence to support the conviction." White, 602 F.3d at 712 (emphasis added). This quotation is merely to underscore the critical importance of the jury instruction on circumstantial evidence. Under Tennessee law, the jury had to apply

> **four rules when testing the value of circumstantial evidence: (1) the evidence should be acted upon with caution; (2) all of the essential facts must be consistent with the hypothesis of guilt; (3) the facts must exclude every other reasonable theory except that of guilt; and (4) the facts must establish such a certainty of guilt as to convince beyond a reasonable doubt that the defendant is the perpetrator of the crime.**

Jeffries, 2000 WL 135388 at *4. As a factual matter, the jury needed judicial guidance on how to apply these rules to the facts and consider the inferences on whether Petitioner's presence at the murder scene established the Petitoner's guilt beyond a reasonable doubt.

Without the circumstantial evidence instruction, the Court concludes that Petitioner was denied a fair trial. "The judge's instructions to the jury as to the law and how the evidence should be assessed are crucial to a fair trial. They should guide the jury's deliberations and are not mere technicalities in our legal system. Errors in such matters may go to the heart of the question of guilt." Houston, 50 F.3d at 385. If such an omission by defense counsel in a trial for theft is deficient and prejudicial, Tappan, 2010 WL 3463310, at *7-8, then the same omission in a trial for first degree murder constitutes such ineffectiveness of counsel so as to warrant Petitioner a new trial. This Court deems this denial of a fair trial to establish the prejudice component of Strickland and thus, the Court

22

concludes that Petitioner has established that her trial counsel provided deficient and prejudicial omission in not requesting a circumstantial evidence instruction at Petitioner's trial.

Based upon Tappan and Tennessee precedent and the several Circuits' holdings that failure of defense counsel to request a jury instruction on the relevant and important proof is deficient and prejudicial, the Court concludes that the Tennessee Court of Appeals's decision on Petitioner's post conviction appeal was not a reasonable application of federal law.

For these reasons, the Court concludes that Petitioner's motion for summary judgment (Docket Entry No. 62) should be granted and the Respondent's motion for summary judgment (Docket Entry No. 63) be granted as to all of Petitioner's claims except for Petitioner's claim that she had ineffective assistance of counsel for her trial counsel's failure to request a jury instruction on circumstantial evidence.

An appropriate Order is filed herewith.

ENTERED this the 31st day of March, 2014.

William J. Haynes, Jr.
Chief United States District Judge